# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CC-00312-COA

**GENERAL MOTORS, LLC**                                                                  **APPELLANT**

**v.**

**RYAN MOTORS, INC.**                                                                        **APPELLEE**

DATE OF JUDGMENT:                        10/20/2016
TRIAL JUDGE:                                    HON. JOHNNY LEE WILLIAMS
COURT FROM WHICH APPEALED:      FORREST COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:           THOMAS A. CASEY JR.
                                                    J. ANDREW GIPSON
                                                    KAYTIE MICHELLE PICKETT
ATTORNEY FOR APPELLEE:               S. ROBERT HAMMOND JR.
NATURE OF THE CASE:                      CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                                  REVERSED AND RENDERED: 11/13/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.    Ryan Motors Inc. (Ryan), a Chevrolet dealer in Hattiesburg, Mississippi, filed an administrative complaint with the Mississippi Motor Vehicle Commission (Commission) after General Motors LLC (GM) approved the relocation request of another Chevrolet dealer to a location ten miles from its dealership. The complaint asserted that by failing to give Ryan notice of the other dealer's relocation, GM violated statutory authority and its franchise agreement with Ryan. The Commission dismissed the complaint, finding that GM was not required to provide notice and that there was no violation. Ryan appealed the dismissal to the Forrest County Chancery Court, which reversed the Commission's decision. Finding the

Commission's decision was not "arbitrary or capricious" and was supported by the evidence, we reverse and render the chancery court's judgment, reinstating the Commission's findings.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Chevrolet dealer Pine Belt Motors (Pine Belt) was located in Purvis, Mississippi, approximately thirteen miles south of Ryan's location. Pine Belt and Ryan each had a franchise agreement with GM, termed a GM Dealer Sales and Service Agreement (SSA). The SSA assigns each dealer a specific geographic territory known as an "Area of Primary Responsibility" or "APR." Although the two dealers' APRs were contiguous, they did not overlap. Under Article 4.2 of the SSA, GM may revise a dealer's APR "if [GM] determines that marketing conditions warrant a change," but GM is required to give thirty to sixty days' notice to the dealer and allow the dealer to submit information either for or against the change during that period.

¶3.     In 2015, Pine Belt sought to move its dealership from Purvis to a location outside of the Hattiesburg city limits on Highway 98, ten miles west of Ryan's current location. The proposed location was still within Pine Belt's APR. On June 10, 2015, GM approved Pine Belt's request to relocate its dealership. Aggrieved, Ryan filed a complaint with the Commission on September 3, 2015, alleging GM had violated Article 4.2 of the SSA and Mississippi Code Annotated section 63-17-113 (Rev. 2013) by failing to give Ryan notice of Pine Belt's relocation. Section 63-17-113(1) states:

> No person shall modify a franchise agreement during the term of such agreement or upon its renewal if the modification substantially and adversely

2

affects the motor vehicle dealer's rights, obligations, investment, or return on investment without giving sixty (60) days['] written notice of the proposed modification to the motor vehicle dealer and without showing good cause to the commission.

Ryan's argument was that GM's approval of Pine Belt's relocation had effectively modified its SSA since GM may, in the future, propose a change to Ryan's APR due to market conditions, and the failure to give the dealer notice was a violation of due process.[1] GM denied that Ryan's SSA had been modified, noting Pine Belt was merely relocating to an area inside its existing APR; thus, it was not required to give Ryan notice under the statute or the terms of the SSA.

¶4. The Commission held a hearing on November 18, 2015. Ryan presented two witnesses: Mickey Ryan, the company's president, and Joe Roesner, an expert witness in dealer network analysis. Mickey Ryan testified that GM's approval of Pine Belt's relocation would negatively impact Ryan's sales. He also claimed that the relocation of Pine Belt effectively modified Ryan's APR and SSA and speculated that once Pine Belt began operations in its new location, GM would change Ryan's APR. Roesner's testimony concerned standard procedures typically utilized by GM in determining whether to approve dealer relocation requests, such as market analyses.

¶5. GM brought its Regional Network Manager, David Bott, to the hearing but did not call any witnesses. Instead, GM submitted Bott's affidavit into evidence, in which he

---

[1] Ryan had filed an earlier complaint on August 19, which the dealer later withdrew, conceding it lacked legal standing under the statutory authority relied upon in the complaint.

3

testified that Ryan's SSA had not been changed, and GM moved to dismiss Ryan's complaint. On rebuttal, Ryan requested that it be allowed to cross-examine Bott on his affidavit and Roesner's testimony. The hearing officer said that questions concerning Roesner's testimony would not be allowed, but because Bott's affidavit was in evidence, Ryan could cross-examine him on its contents. Ryan decided not to cross-examine Bott and rested its case.

¶6. The Commission entered its order on December 16, 2015, concluding there was no evidence that Ryan's SSA had been modified. Although it did not "condone or approve of the manner in which GM approved the relocation" of Pine Belt in opposition to the other dealer's wishes, the Commission found that GM did not violate section 63-17-113(1) and dismissed the complaint.

¶7. Ryan filed an appeal with the chancery court, asserting the Commission's findings were "arbitrary and capricious." Noting the Commission's "cryptic" disapproving language toward GM's actions and its failure to allow Ryan the opportunity to "adequately cross-examine" Bott, the court reversed the Commission's decision and awarded Ryan attorney's fees. Ryan filed a motion to amend the judgment, requesting that the court "order GM to withdraw its permission for relocation of Pine Belt," or alternatively, that the court remand the case and require GM to show "it has good cause to allow the relocation" of Pine Belt. Opposing Ryan's motion, GM argued that Ryan's motion was not proper under Mississippi Rules of Civil Procedure 59 or 60 and its "request to enjoin Pine Belt from relocating [was]

4

contrary to law." On February 6, 2017, the chancery court denied Ryan's motion, finding its request for injunctive relief "improper" because the court was "sitting in an appellate posture, and not as a fact finder."

¶8.     GM appeals the chancery court's reversal of the Commission's decision and requests that the agency's dismissal of Ryan's complaint be reinstated.

## DISCUSSION

### I.    Whether the chancery court erred in ruling that the Commission's findings were "arbitrary and capricious."

¶9.     The chancery court determined that the Commission had no choice under the statute; its "hands were essentially tied" to rule in GM's favor. Therefore, the court found that the Commission's decision was "arbitrary and capricious," as the "narrow[] tailor[ing]" of the rules made it so Ryan had "no way to adequately challenge them." Addressing the Commission's language that it did not "condone or approve" of GM's actions, the court concluded that not requiring GM to give Ryan notice until after the Pine Belt's building was completed "appears to be fundamentally deceptive, misleading and unfair." GM argues the chancery court improperly substituted its judgment for that of the Commission in finding the agency's actions were "arbitrary and capricious."

¶10.    In reviewing an agency's decision, the appellate court determines "whether or not the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party." *Tillmon v. Miss.*

5

*State Dep't of Health*, 749 So. 2d 1017, 1020-21 (¶15).  The Mississippi Supreme Court has

held:

> "Arbitrary" means fixed or done capriciously or at pleasure.  An act is arbitrary
> when it is done without adequately determining principle; not done according
> to reason or judgment, but depending upon the will alone,—absolute in power,
> tyrannical, despotic, non-rational,—implying either a lack of understanding of
> or a disregard for the fundamental nature of things.
>
> "Capricious" means freakish, fickle, or arbitrary.  An act is capricious when
> it is done without reason, in a whimsical manner, implying either a lack of
> understanding of or a disregard for the surrounding facts and settled
> controlling principles.

*McGowan v. Miss. State Oil & Gas Bd.*, 604 So. 2d 312, 322 (Miss. 1992).

### A. Whether GM violated statutory authority and the terms of the SSA.

¶11.    One reason given by the chancery court for reversing the Commission's findings was

the Commission's "cryptic" language that it did not approve or "condone" GM's actions.

However, GM's counsel provided a frank and honest explanation of those comments to the

chancellor at the hearing:

> I think the reason is because let's face it; this [C]ommission is made up of
> dealers.  These are Mr. Ryan's business colleagues and friends.  I don't think
> it was an easy decision for them to rule in favor of [GM].  I don't – and I mean
> no disrespect for the [C]ommission whatsoever, but it is a [C]ommission made
> up of car dealers, and as a manufacturer, it's always somewhat difficult to
> appear in front of the Commission like that.  I think that Mr. Ryan . . . [is] an
> acquaintance of most of the people who were ruling against him.

But despite its disapproval of GM's failure to give notice, the Commission still found that

based on the evidence, there was no modification of Ryan's SSA, and therefore, no notice

to the dealer was required under the statute or SSA.

¶12.    When presented with the latest notice of the APR dated November 1, 2015, only two weeks before the hearing, Mickey Ryan admitted to the Commission there had been no written modification to the dealer's APR.  Furthermore, a letter sent from Mickey Ryan to GM on November 10, in which he requested a relocation of Ryan Motors to Highway 98, acknowledged there had been no such modification, stating:  "*As my APR has not been modified by our November 2015* [*SSA*], I trust that my request can be reviewed and quickly approved."  (Emphasis added).  Ryan's expert witness, Roesner, also conceded that he had not seen any modification to Ryan's APR.

> Q.    Have you seen a written contract that has modified the APR?
>
> A.    I haven't seen a new – no, I have not seen such a written contract.
>
> Q.    Well, so I'm just having trouble understanding how the franchise agreement has been changed if you haven't seen it and no one in this room has seen it.
>
> A.    I haven't seen such a contract, sir.
>
> Q.    Who told you that it exists?
>
> A.    Nobody told me it exists, sir.
>
> . . . .
>
> Q.    And is there any change in [Ryan Motors'] APR from January 2014 to November 2015?
>
> A.    I don't think so, no.
>
> Q.    Are you aware of any other addendum to the franchise agreement in the

past two weeks?

A.     I'm not, sir.

¶13.   We find the evidence or, in this case, the lack thereof, supports the Commission's findings. The only basis for Mickey Ryan's testimony that a modification of his dealership's SSA had occurred was GM's letter approving Pine Belt's relocation and his speculation that Ryan's APR "will change if th[at] facility is relocated." We find this insufficient to conclude that a modification of Ryan's SSA had occurred. *See Van Wie Chevrolet Inc. v. General Motors LLC*, 145 A.D. 3d 1, 8 (N.Y. App. Div. 2016) (rejecting Van Wie's argument that GM's approval of another dealer's relocation request "ipso facto result[ed] in a modification of [its] franchise for which notice may be required" under the applicable statute). Therefore, because Ryan failed to produce any evidence that GM modified Ryan's franchise agreement, GM was under no obligation to provide the dealer with notice, either under section 63-17-113 or the terms of the SSA.

> B.     *Whether the Commission's decision to restrict the cross-examination of Bott violated Ryan's statutory and constitutional rights.*

¶14.   At the hearing before the chancery court, counsel for Ryan asserted for the first time that the Commission violated Mississippi Annotated Code section 63-17-95 (Rev. 2013), which states that "[a]ll parties whose rights may be affected at any hearing before the Commission shall have the right . . . to cross-examine witnesses appearing against them[.]" The chancery court held that not allowing Ryan "the opportunity to adequately cross-examine

8

Mr. Bott" was "essentially a violation of constitutional rights; again leading the [c]ourt to determine that the Commission's ruling is arbitrary and capricious."

¶15.    GM argues that this issue was waived because Ryan did not raise the issue of due process and section 63-17-95 in the briefs to the chancery court. However, Ryan did assert in its reply brief: "Ryan tried to call Mr. Bott as a witness[,] and the Commission refused to allow him to be questioned on anything but the affidavit. Ryan had no need to ask any questions regarding the affidavit because GM had already confirmed that it was relying on Ryan's witnesses."[2] Therefore, we will address the merits of this issue.

¶16.    "Administrative hearings are not trials and are thereby not governed by the same rules which are applicable to courts of law." *Pub. Emps. Retirement Sys. v. Stamps*, 898 So. 2d 664, 677 (¶45) (Miss. 2005) (citing *United Cement Co. v. Safe Air for the Env't Inc.*, 558 So. 2d 840, 842 (Miss. 1990)). Ryan argues section 63-17-95 provided a statutory right to cross-examine a witness at a hearing "appearing against them" before the Commission. However, Bott did not testify against Ryan at the hearing; only his affidavit was admitted into evidence. The Commission's hearing officer allowed Ryan to cross-examine Bott. Cross-examination was simply limited to the contents of Bott's affidavit. At that point, Ryan made the choice not to cross-examine Bott, and counsel rested. Therefore, we cannot find that Ryan was denied the opportunity to cross-examine the witness.

---

[2] This assertion was the basis for Ryan's claim that Bott's affidavit had been waived and was not properly in evidence because GM said it was calling him as a witness at the hearing and failed to do so.

¶17. We find that there was nothing "arbitrary or capricious" about the Commission's findings and that the chancery court substituted its judgment for that of the agency. We reverse and render the court's findings and reinstate the Commission's order.

## II. Whether the chancery court erred in awarding Ryan attorney's fees.

¶18. GM also argues the court lacked a legal basis for awarding Ryan attorney's fees and costs under Mississippi Code Annotated section 63-17-101 (Rev. 2013), which provides:

> Any licensee suffering pecuniary loss because of any willful failure by any other licensee to comply with any provision of the Mississippi Motor Vehicle Commission Law or with any rule or regulation promulgated by the commission under authority vested in it by said law may recover reasonable damages and attorney fees therefor in any court of competent jurisdiction.

Based on our decision to reverse and reinstate the Commission's finding that GM did not violate any rules or regulations, we likewise reverse the chancery court's award of attorney's fees to Ryan.

¶19. **REVERSED AND RENDERED.**

**LEE, C.J., GRIFFIS, P.J., WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. IRVING, P.J., CARLTON AND FAIR, JJ., NOT PARTICIPATING.**

10